THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN W. WAINWRIGHT and Another, Defendants, Impleaded with THE CITY OF NEW YORK, Appellant.

Second Department. May 11, 1923.

Deeds — action to annul letters patent for failure to comply with conditions of grant — grant to owner of upland was of restricted beneficial use of land between high and low water for purpose of filling in land under water — grant contained reservation of full right to State of use until land filled in — grant was to cease if improvements were not completed within five years — after grant was made State, by Laws of 1909, chap. 563, granted city of New York right, title and interest in certain lands, including land in question — grant to city was not to affect land thereafter granted on application made before act took effect — act applied to land in question — State had "interest" in land in question at time act was passed — land passed to city on annulment of patent.

In an action brought to annul certain letters patent granted by the State to the individual defendant, based on his failure to erect a bulkhead and pier and fill in and reclaim land under water within the time limited, it appeared that the grant was made in 1907 and that by its terms it was for the "purpose of granting and conveying a restricted beneficial enjoyment in and to lands under water and between high and low water mark" to the owner of the uplands "and for no other object or purpose whatsoever;" that the restricted purpose expressed in the grant is "to fill in the lands under water herein granted and to erect thereon a bulkhead and pier of a substantial character;" that the grant reserved to the People "the full and free right, liberty and privilege of entering upon and using all and every part of the above described premises in as ample a manner as they might have done had this power and authority not

been given, always excepting such parts thereof as are actually occupied and covered by structures * * * and such parts of said premises as have been actually filled in and reclaimed from low or marsh land;" and the grant provided further, that unless the improvements were completed within five years the grant was to cease and determine. After this grant was made, the Legislature passed an act (Laws of 1909, chap. 568) granting to the city of New York for the purpose of harbor improvement " such right, title and interest as the State of New York may have in and to the land under water in Jamaica bay and Rockaway inlet," and said act provided that it should not affect any land that might thereafter be granted by the Commissioners of the Land Office under any application made prior to its taking effect.

*Held,* that the act of 1909 did not exclude from its operation land which had been previously granted but which had been forfeited or as to which the right of forfeiture existed and did not, therefore, eliminate specifically from its operation the land in question here.

The conditions of the patent under consideration in this case apply only to the right to fill in the lands granted and erect thereon a bulkhead and pier of substantial character and until that condition was performed the People reserved the full right of using the premises excepting the parts actually occupied by structures and fill. Therefore, this was not a grant by the State of the whole title in fee upon condition subsequent.

The State reserved full dominion over the subject of the grant until the lands were built upon or reclaimed as provided in the grant and this reservation is an " interest " in the land within the meaning of chapter 568 of the Laws of 1909 and passed to the city of New York thereunder, irrespective of whether the condition in the grant was precedent or subsequent.

The State had merely the bare legal right to annul the patent and after annulment it could not resume this reserved right but the title passed to the city.

Moreover, when the State re-entered for a breach of the condition it became seized of its original estate and its possibility of reverter then ripened into a title as of the date of its original holding to the same extent as though no grant had been made and this title passed to the city under said act of 1909.

And again, the State is estopped after having granted all its right, title and interest in the land in question to the city of New York to subsequently re-enter and claim title in itself as against the city.

Appeal by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 31st day of October, 1922, upon the decision of the court rendered after a trial at the Queens Special Term.

*Charles J. Nehrbas* [*George P. Nicholson, Corporation Counsel,* and *John J. Mead* with him on the brief], for the appellant.

*Anson Getman* [*Carl Sherman, Attorney-General,* and *George S. Parsons* with him on the brief], for the respondent.

Young, J.:

The action is brought to annul certain letters patent granted by the State to the defendant John W. Wainwright November 22, 1907, for his failure to comply with the conditions of the grant

within the time limited, by erecting a bulkhead and pier or filling in said land or reclaiming the premises from low or marsh land, etc., pursuant to the terms of the patent.

The defendant city interposed an answer in which, among other things, it alleges that in the event that said letters patent be vacated and annulled, it will become automatically seized of an estate in fee in the premises under chapter 568 of the Laws of 1909, and prays that its rights and interests may be adjudicated.

The defendant John W. Wainwright also interposed an answer which was afterwards withdrawn and he did not appear upon the trial.

The facts are undisputed. On November 22, 1907, letters patent were issued to the defendant John W. Wainwright by which the People " for the purpose of granting and conveying a restricted beneficial enjoyment in and to lands under water and between high and low water mark hereinafter described, to John W. Wainwright, the owner of the adjacent uplands, and for no other object or purpose whatsoever and with the reservations and upon the conditions hereinafter expressed,   *   *   *   do give and grant unto John W. Wainwright, his heirs and assigns the land under water, and between high and low water mark " which are therein described and consist of certain lands in Queens county lying north of Wainwright's upland on Rockaway Beach.

The letters patent were issued for the purpose of filling in the lands under water and erecting thereon a bulkhead and pier of a substantial character and provided that unless these improvements were completed within five years from the date of the patent, the grant should cease and determine and become null and void.

On May 29, 1909, chapter 568 of the Laws of 1909 became effective. The act provided as follows:

" SECTION 1. To the end that the city of New York may co-operate with the Federal government in the creation of a new harbor in and about Jamaica bay, including the making of channels, basins, slips and other necessary adjuncts, through the excavation of the soil or lands under water, and otherwise, intended for the advancement of the commercial interests of the city, State and nation, there is hereby granted for the purposes specified in this act, to the city of New York such right, title and interest as the State of New York may have in and to the land under water in Jamaica bay and Rockaway inlet and the tributaries thereto which lie to the northward of latitude forty degrees thirty-three minutes north, and to the eastward of longitude seventy-three degrees fifty-six minutes west, as now interpreted, excluding, however, all lands under water included within the boundary of Nassau county.

This grant shall become operative upon the United States government making its first appropriation for the creation of the new harbor mentioned in this act, or upon the city of New York appropriating and setting aside a sum not less than one million dollars for the same purpose.

" § 2. The grant shall not affect such land as may hereafter be granted by the Commissioners of the Land Office under any application made prior to May twenty-ninth, nineteen hundred and nine, but if any such application be denied, the land covered thereby shall pass to the city of New York under the conditions of this act."

On April 18, 1912, chapter 522 of the Laws of 1912 became a law which recited chapter 568 of the Laws of 1909, and granted to the city for the same purpose as the act of 1909 the right, title and interest of the State in and to the islands, hummocks, hassocks, marsh and meadow lands in Jamaica bay and Rockaway inlet and the tributaries thereto which lie in the same location as the land under water described in the act of 1909, excluding, however, all islands, hummocks, etc., in Nassau county and all islands, hummocks, etc., theretofore granted.

Both the city and the United States government made the required appropriations in 1910 and 1911, and the grant became operative under the terms of the act.

Upon these facts the learned Special Term gave judgment to the plaintiff, annulling the letters patent and barring the defendants of all right, title and interest in the premises. From this judgment the defendant city of New York has appealed.

The learned justice at Special Term, in an opinion handed down in deciding the case, said: " The grant, however, of ' such right, title and interest as the State of New York may have ' is expressly limited by section 2, for it provides that ' the grant shall not affect such land as may hereafter be granted by the Commissioners of the Land Office under any application made prior to May twenty-ninth, nineteen hundred and nine, but if any such application be denied, the land covered thereby shall pass to the city of New York under the conditions of this act.' The statute does not expressly exclude lands already conveyed, but if, as appears by the act, it was the intention to exclude land where application had been made and not denied, it would seem that it was intended to exclude lands already patented. The act of 1912 also excludes from the grant ' any and all such islands, hummocks, hassocks, marsh and meadow lands or parts or portions thereof heretofore granted.' * * * The language of the act is clear. While it may have been the intention of the Legislature to include patented land

where there had been a failure of compliance, the language of the act does not so provide, and to supply the omission would be assuming legislative authority." (119 Misc. Rep. 71.)

In my opinion this construction is erroneous. To hold that because the Legislature excluded from the grant lands for which prior applications had been made, unless they were denied, it also intended to exclude lands which had already been granted, but which might become forfeited for non-user, is to ignore the plain meaning of the language used, and to add to the act words and subject-matter having no relation thereto. In other words, the learned Special Term, by this construction, has added to the section relating to lands excluded from the grant other lands, neither expressly mentioned nor in any true sense implied. Statutes must be construed in accordance with the plain legislative intent to be gathered from the language of the act itself in the light of the purpose of its enactment. The manifest purpose of the Legislature in enacting chapter 568 of the Laws of 1909, as recited therein, was to grant to the city for the creation of a new harbor all the lands under water in the locality described in which it had any right, title or interest. As no interest in the lands mentioned in section 2 for which application had been filed had been theretofore granted and the entire title and interest, therefore, remained in the State, it was the plain intent of the Legislature to protect the applicants who had made their applications in good faith, and it, therefore, excluded from the grant to the city all such lands. It was not, however, necessary for any purpose expressly to exclude from the operation of the act lands already granted. The rights and interests of the grantees therein were excluded by operation of law. But if we may construe this statute in accordance with the view of the learned Special Term by adding thereto language neither expressed nor implied, simply because in our opinion it seems better to effectuate the legislative purpose, why may we not further add to this language by saying that the Legislature plainly intended to exclude lands already granted unless they thereafter became forfeited to the State, in which case they should pass to the city under the act in the same manner as those, prior applications for which had been denied. But such reasoning in either case is, in my opinion, unwarranted and results in judicial legislation, in which the courts have no right to indulge.

In my opinion the sole inquiry is: Did the State at the time of the act of 1909 have any " right, title " or " interest " in the lands described in the Wainwright patent which might ripen into a title upon forfeiture, and which was capable of being granted or conveyed? If it did, such " right, title " or " interest " passed

to the city under the act; if not, such lands were not comprehended within its terms.

It becomes important, therefore, to analyze the Wainwright grant and determine its nature and character and the precise right, title, interest or estate granted. It will be noted, then, that it is made for the purpose of " granting and conveying a restricted beneficial enjoyment in and to lands under water " described " and for no other object or purpose." That restricted purpose is expressed in the grant " To fill in the lands under water herein granted and to erect thereon a bulkhead and pier of a substantial character."

It seems to me that this grant is similar in character to that considered by the Court of Appeals in *First Construction Co.* v. *State of New York* (221 N. Y. 295). It is true that the grants under review in that case were by acts of the Legislature and gave to the persons named and their heirs and assigns the privilege to build and maintain a bulkhead on the line theretofore established by the Legislature, and to fill in the lands under water between high-water line of the upland and such bulkhead, to maintain a pier thereon and to erect warehouses, etc., and do not contain express words of grant of the lands under water. But, in my opinion, the difference is in words and not in substance. All that was given by the State to Wainwright under the grant in question was the right to fill in the lands under water and erect a bulkhead and pier. The court, in the case last cited, said that " an act granting the right to fill in lands under water, and thereby acquire title to the same, gives an inchoate, vested interest in the lands described which is a property right and of which, unless forfeited or lost in some way, the grantee cannot be deprived without compensation." (P. 316.) The court also said that this right might as aptly be termed a franchise as anything else. (P. 317.)

If this grant be similar in nature to a conveyance of real property in fee upon a condition subsequent, it would seem that the State retained in the lands granted nothing but a possibility of reverter which is not an interest or estate in land or even a chose in action, and, therefore, not the subject of conveyance or assignment. It is a mere possibility available only to the grantor or his heirs or successors. ( *Upington* v. *Corrigan*, 151 N. Y. 143; *Fowler* v. *Coates*, 201 id. 257.)

If, however, the condition were a condition precedent to the vesting of title in the grantee, then the State retained and was vested with title to the lands subject only to be divested upon performance of the condition. Such title, in my opinion, was one which could be granted and would pass under the act in question.

The patent, however, contains plain words of a present grant. They " give and grant unto John W. Wainwright, his heirs and assigns the land under water," etc. But, on the other hand, they are given, as they recite, " for the purpose of granting and conveying a restricted beneficial enjoyment in and to lands under water  *  *  *  and for no other object or purpose whatsoever and with the reservations and upon the conditions " thereinafter expressed. The purpose of the restricted beneficial enjoyment is later expressed to be that the " Letters Patent are issued for the following purposes: To fill in the lands under water herein granted and to erect thereon a bulkhead and pier of a substantial character." The reservations are to the People of " the full and free right, liberty and privilege of entering upon and using all and every part of the above described premises in as ample a manner as they might have done had this power and authority not been given, always excepting such parts thereof as are actually occupied and covered by structures, docks or buildings of a substantial character, and such parts of said premises as have been actually filled in and reclaimed from low or marsh land," and the condition is that " unless the improvements above named are completed within five years from the date of these presents, this grant shall cease and determine and become null and void."

The language of the Wainwright patent would seem to be susceptible of a construction which would make the vesting of title in the grantee dependent upon the performance of the condition, and such condition would, therefore, be a condition precedent. But in *Archibald* v. *N. Y. C. & H. R. R. R. Co.* (157 N. Y. 574), where defendant attacked a prior grant for breach of the condition, the court held that this breach did not enable the defendant to treat the prior patent as invalid or void or permit an attack upon it in a collateral way; that if there had been a breach of the *conditions subsequent* in the grant, the defendant was not at liberty to take advantage of the omission. " The State only can claim the right to vacate the patent for breach of *conditions subsequent*, and then only in a direct action or proceeding for that purpose." (P. 581.)

As above analyzed, the conditions of the patent under consideration apply only to the right to fill in the lands granted and erect thereon a bulkhead and pier of a substantial character. In other words, nothing but the right granted depended upon the condition, and until that was performed the People reserved the full right of using the premises in as ample a manner as they might have done had this power and authority not been given, excepting the parts actually occupied by structures, etc. Clearly,

then, this was not a grant by the State of the whole title in fee upon a condition subsequent similar to the conveyance under consideration in *Upington* v. *Corrigan* (*supra*). Manifestly, the State retained full dominion over the subject of the grant until the lands were built upon or reclaimed as therein provided. This reservation was, in my opinion, an interest in the lands held by the State which passed to the city under the act of 1909, irrespective of whether the condition was precedent or subsequent. At the time this action was commenced this reserved interest was no longer in the State, but had passed to the city. By bringing this action and procuring a judgment annulling the patent for breach of the condition, the State could not, in my opinion, resume this reserved right, and the only result of the judgment annulling the patent was to sweep it away without giving to the State any title or interest in the land. In other words, after the passage of the act of 1909, there remained in the State, under the Wainwright patent, only the naked right to annul it. The result follows that the city obtained upon the annulment of the grant full and complete title.

But I think we may also consider this case from another point of view. When the State re-entered for a breach of the condition, it became seized of its original estate. (*People* v. *Traktman*, 201 App. Div. 864.) This would relate back to its original holding, and by the breach of the condition and the re-entry of the State, its possibility of reverter ripened into a title to the same extent as though no grant had been made, and, therefore, this title passed to the city under the act of 1909.

Again, may the State, having granted to the city all its right, title and interest in the lands under water in Jamaica bay, which included those in question, now claim through forfeiture of a prior grant, an interest in the lands granted? When it made the grant to the city for the purposes recited in the act, it clearly intended to give the city all it had or possessed. While it could not clothe the city with the right to claim the forfeiture and to re-enter, it was, in my opinion, clearly estopped to assert any title in itself as against the city. To hold that a grantor conveying lands upon a condition subsequent, may again grant them to a third party either before or after breach of the condition, and subsequently re-enter and claim title in himself as against such third party would be manifestly unjust and inequitable.

The judgment should be modified accordingly, and as modified affirmed, without costs, inconsistent findings and conclusions to be reversed and new findings made.

Kelly, P. J., Manning, Kelby and Kapper, JJ., concur.

Judgment modified in accordance with opinion, and as modified affirmed, without costs. The findings of fact and conclusions of law contained in the decision at Special Term so far as inconsistent with said opinion are reversed, and new findings made. Settle order on notice before Mr. Justice YOUNG.